**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| TEDROSE BERAKI, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-1113 (RC) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| CRESCENT HOTELS AND RESORTS and | : | | |
| UNITE HERE LOCAL 25, | : | | |
| | : | | |
| Defendants. | : | | |

**<u>MEMORANDUM OPINION</u>[1]**

**GRANTING DEFENDANT UNITE HERE LOCAL 25'S MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT**

## I. INTRODUCTION

Unite Here Local 25 ("Defendant" or "the Union") asks the Court to dismiss each of

Tedrose Beraki's ("Plaintiff") claims for failure to state a claim.  Plaintiff asserts the following

four claims against the Union: (1) age discrimination under the Age Discrimination in

Employment Act, 29 U.S.C. §§ 623, 626; (2) violation of the Union's duty of fair representation;

(3) vacatur of an arbitration award under the Federal Arbitration Act; and (4) violation of 29

U.S.C. § 411(a)(5), the Labor Management Reporting and Disclosure Act.  The Court grants the

Union's motion to dismiss.

---

[1] The Court acknowledges that the motion resolved in this opinion was brought only by
Unite Here Local 25 ("Defendant" or "the Union") without being joined by Crescent Hotels and
Resorts ("the Hotel"), another named defendant in this action.  The Hotel has not yet appeared
regarding this matter.  Mot. Dismiss at 1 n.1.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Beraki was employed as a bellman at Crescent Hotels and Resorts beginning August 25, 2018.  Def.'s Supp. Mot. Dismiss Am. Compl. ("Mot. Dismiss") at 1, 3, ECF No. 12-1; Pl.'s Am. Mot. ("Am. Compl.") ¶ 21, ECF No. 8.  The other defendant in this case, the Union, is a labor union that represents hospitality workers, including employees of the Hotel.  Mot. Dismiss at 1.  A major responsibility of the Union is to "negotiate[] a collective bargaining agreement ('CBA') with the Hotel setting wages, benefits, work rules, and other conditions of employment."  *Id.*  The Union enforces terms of the CBA through contractual grievances and arbitration procedures.  *Id.*; *see also* Def.'s Supp. Mot. Dismiss Original Compl. Ex. A ("Arbitration Award") at 5, ECF No. 4-3; Def.'s Supp. Mot. Dismiss Original Compl. Ex. B ("Collective Bargaining Agreement") at 37–40, ECF No. 4-4.[2]

In March 2019, Beraki applied and interviewed for a front desk position at the Hotel; he was subsequently denied the position in July 2019 when it was awarded to an outside applicant.  Mot. Dismiss at 3; Am. Compl. ¶¶ 26–28, 37, 41.  On August 8, 2019, Beraki sent a letter to the Union detailing CBA violations he believed the Hotel had committed in relation to his rejected application.  Mot. Dismiss at 3–4; Am. Compl. ¶ 48.  On September 25, 2019, the Hotel terminated Beraki's employment for "insubordination, creating a hostile work environment, and

---

[2] The Union filed two separate motions to dismiss.  The first was a motion to dismiss the original complaint.  Def.'s Supp. Mot. Dismiss Original Compl., ECF No. 4-1.  The second was a motion to dismiss the amended complaint.  Mot. Dismiss.  The Court denied the original motion to dismiss (ECF No. 4-1) as moot.  Min. Order of Mar. 31, 2022.  Therefore, the Court resolves claims raised only in ECF No. 12-1, the motion to dismiss the amended complaint, and not claims raised only in ECF No. 4-1, the motion to dismiss the original complaint.  Additionally, "[t]o avoid duplication of exhibits on the docket, [the Court] will cite to the docket numbers of the exhibits already filed with [the Union's] original motion to dismiss where possible."  Mot. Dismiss at 3 n.2.

demonstrating a pattern of refusal to follow the Hotel's policies and procedures."  Mot. Dismiss at 4 (cleaned up); Arbitration Award at 35–36; Am. Compl. ¶ 68.

On Beraki's behalf, the Union filed two grievances in connection with his employment at the Hotel.  Mot. Dismiss at 1.  One was related to the Hotel's termination of Beraki's employment in September 2019; in it, the Union grieved "that absent any prior formal discipline, the [Hotel] lacked just cause to terminate [Beraki.]"  Mot. Dismiss at 1, 4; *see also* Arbitration Award at 36–37.  The other grievance contended that Beraki should have been awarded a vacant front desk agent position because he was the senior bidder.  Mot. Dismiss at 1; Am. Compl. Exs. 23–24 at 155–56, ECF No. 11.  The Union presented the case to a neutral arbitrator.  Mot. Dismiss at 1.

The Union succeeded in obtaining an arbitration decision to reinstate Beraki to his previous position with full back pay and seniority rights, and the Union also succeeded in the promotion grievance by securing a front desk agent position for Beraki.  *Id.*  On September 30, 2020, the Arbitrator required Plaintiff to execute a Last Chance Agreement ("LCA") "to be prepared jointly by the representatives of the Hotel and the Union."  Mot. Dismiss at 6; Arbitration Award at 38, 47 (citation omitted); Am. Compl. ¶ 75.  The Arbitrator made clear in his order that Plaintiff's violation of the LCA could subject Plaintiff to immediate termination. Mot. Dismiss at 6; Arbitration Award at 38, 47; Am. Compl. ¶ 75.  But Beraki refused to settle because he did not accept the terms outlined in the Arbitrator's LCA, which would have allowed the Hotel to immediately terminate Beraki for any violation of the LCA.  Mot. Dismiss at 6; Arbitration Award at 38, 47; Am. Compl. ¶ 75.

Over several months following the Arbitrator's decision, "the Union [negotiated] with the [Hotel] over the LCA mandated by the arbitration award so that [Beraki] could be reinstated to

his employment." Mot. Dismiss at 6; Am. Compl. ¶¶ 77–81.  Beraki told the Union's General

Counsel that "he would not sign the LCA because 'there's you, know, things I don't agree

[with.]'"[3]  Mot. Dismiss at 6; Am. Compl. Ex. 25 at 162, ECF No. 11.  However, the Union's

General Counsel explained to Beraki that they "got everything we could have possibly wanted

out of it, all the backpay, the retro seniority.  You're getting the position.  When they tried to

maneuver and not give you as much backpay, we beat the crap out of them on that, got every

penny."  Mot. Dismiss at 7 (internal quotation marks omitted); Am. Compl. Ex. 27 at 166, ECF

No. 11.  Beyond this, the Union also succeeded in negotiating "the removal of a clause from the

LCA that could have allowed the Hotel to terminate Plaintiff for lack of work."  Mot. Dismiss at

7; Am. Compl. Ex. 27 at 169, ECF No. 11.

　　　Although the Union was successful in supporting Beraki's reinstatement and promotion

grievances, Beraki filed a lawsuit asserting the following four claims against the Union: (1) age

discrimination under the Age Discrimination in Employment Act; (2) violation of the Union's

duty of fair representation; (3) vacatur of an arbitration award under the Federal Arbitration Act;

and (4) violation of 29 U.S.C. § 411(a)(5), the Labor Management Reporting and Disclosure Act.

Mot. Dismiss; Am. Compl.  The Union moves to dismiss all of Plaintiff's claims.  Mot. Dismiss

at 2.  The Union also requests sanctions against Plaintiff for submitting an allegedly "falsified

EEOC right-to-sue letter as one of the exhibits to his Amended Complaint."  *Id.* at 9.

---

[3] Beraki would not sign the LCA for the following primary reasons: "(1) if he violated any Hotel rules during the 18 months following his reinstatement, he could be immediately discharged; and (2) in that circumstance, Plaintiff, like all employees covered by the CBA, could only challenge the Hotel's action through the CBA's mandatory grievance and arbitration procedure."  Am. Compl. Ex. 25 at 160, ECF No. 11.

### III.  LEGAL STANDARDS

#### A.  Legal Standards for *Pro Se* Plaintiffs

A *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  But even *pro se* litigants "must comply with the Federal Rules of Civil Procedure." *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  The Court need not assume the role of advocate for a *pro se* plaintiff.  *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) ("[A] court need not act as an advocate for *pro se* litigants . . . ."); *Sun v. D.C. Gov't*, 133 F. Supp. 3d 155, 168 n.6 (D.D.C. 2015) ("[I]t is not the Court's job to canvass the record for documents supporting a *pro se* party's position.").

#### B.  Legal Standards for Motions to Dismiss for Failure to State a Claim

To prevail on a motion to dismiss for failure to state a claim, a plaintiff need only provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits, but rather "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.  Additionally, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."  *Jones v. Bock*, 549 U.S. 199, 215 (2007).

"In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  In employment discrimination cases, courts may, and often do, take judicial notice of EEOC charges and EEOC decisions.  *See, e.g.*, *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018).

## IV.  ANALYSIS

### A.  Count I: Age Discrimination Under the Age Discrimination in Employment Act ("ADEA")

The Union relies on two distinct arguments in support of its motion to dismiss Plaintiff's ADEA claim.  First, the Union argues that Plaintiff failed to exhaust his claim and instead submitted falsified evidence of exhaustion; it therefore says that Plaintiff's entire case should be

dismissed as a Rule 11 sanction.  Mot. Dismiss at 11.  Second, the Union argues that Plaintiff's

ADEA claim fails to state a claim for relief.  Mot. Dismiss at 15.  For the following reasons, the

Court dismisses Plaintiff's ADEA claim.

    1.  Exhaustion and Plaintiff's Alleged Submission of a Falsified Right-to-Sue Letter

    For a plaintiff to properly state an ADEA claim, they must exhaust administrative

remedies by attaining an EEOC right-to-sue letter.  29 U.S.C. §§ 626(d)(1), (e); *see Washington*

*v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) ("Before suing under . . .

the ADEA[,] . . . an aggrieved party must exhaust his administrative remedies by filing a charge

of discrimination with the EEOC[.]"); *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 67 n.3

(D.D.C. 2011).  An unexhausted ADEA claim must be dismissed.  *See Younger v. D.C. Pub.*

*Schs.*, 60 F. Supp. 3d 130, 140–41 (D.D.C. 2014)).

    Here, Plaintiff claims to have exhausted his administrative remedies by filing an "EEOC

charge against both the [H]otel and the [U]nion."  Mot. Dismiss at 16; Am. Compl. ¶ 4.

However, the Union alleges that Plaintiff submitted a falsified EEOC right-to-sue letter with his

amended complaint that differed in material respects to the EEOC right-to-sue letter first filed

with Plaintiff's original complaint.  *See* Mot. Dismiss at 11; *compare* Am. Compl. Ex. 2 at 7,

ECF No. 11; *with* Pl.'s Exs. Original Compl. ("Original Compl. Exs.") at 1, ECF No. 1-1.

Specifically, the Union alleges that Plaintiff altered the EEOC right-to-sue letter submitted with

the original complaint, which referenced only a charge against the Hotel, by deleting the

reference to the Hotel such that the letter submitted with the amended complaint might be read to

demonstrate exhaustion of charges against both the Hotel *and* the Union.[4]  Mot. Dismiss at 16.

---

[4] Despite having identical EEOC Charge Numbers, ECF No. 1-1 refers to charges against
the Hotel in the bottom left-hand corner of the document, but not to a charge against the Union.
ECF No. 11 fails to name either the Hotel or Union in the bottom left-hand corner of the

Plaintiff certified "[a] copy of January 19, 2021, charge letter" "under penalties of perjury that the . . . [charge letter is] true and correct."  Am. Compl. at 2, ECF No. 11.  The Court's review of both right-to-sue letters strongly suggests that Plaintiff did, in fact, falsify certain key aspects of the document in an attempt to show that he exhausted his administrative remedies.

Federal Rule of Civil Procedure 11(b) "applies to '[r]epresentations to the Court' made in 'presenting to the [C]ourt (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper." *Ali v. Tolbert*, 636 F.3d 622, 626 (D.C. Cir. 2011) (citing Fed. R. Civ. P. 11(b)).  District Courts have the inherent authority "to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." *Ali*, 636 F.3d at 627 (citing *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).  Rule 11 sanctions under this authority require the Court to find "by clear and convincing evidence that [a party] committed sanctionable misconduct that is tantamount to bad faith." *Id.*

Here, the Union makes a strong showing that Plaintiff submitted a falsified right-sue-letter from the EEOC.  Even so, the Court cannot so find by clear and convincing evidence on the current record; for example, there has not been a hearing on the issue.  And as explained below, the Court grants Defendant's motion to dismiss all claims.  Because dismissal is the principal sanction the Union requests, it is not necessary to definitively resolve the falsification issue or to impose any sanction at this stage.

---

document, yet Plaintiff claims to have "filed [an] EEOC charge against both the [H]otel and the [U]nion." Mot. Dismiss at 12; Am. Compl. ¶ 4.  Various other differences exist between the two documents that are supposed to be identical.

Alternatively, the Union suggests that "the Court should at a minimum strike from the record the falsified Exhibit 2 to Plaintiff's Amended Complaint and all allegations in the Amended Complaint that derive from Exhibit 2, given Plaintiff's reliance on false evidence." Mot. Dismiss at 14 n.10.  Again, because the Court grants Defendant's motion to dismiss in all other respects as detailed in the following sections of this opinion, the Court finds it unnecessary to grant this relief.

The Union's final request on the sanctions front is for the Court to "issue a clear directive to Plaintiff that any further submission of false evidence, attempts to mislead the tribunal, interference with the integrity of Court proceedings, or other misconduct will result in the dismissal of his entire case."  Mot. Dismiss at 14–15 n.10.  The Court warns Plaintiff that any attempt to submit false evidence to this Court or the Court of Appeals may result in sanctions, including the dismissal of the case and/or appeal.

As an alternative to its request for dismissal as a sanction, the Union requests dismissal on the merits; that is, it argues that Plaintiff fails to state an ADEA claim because he failed to file an EEOC charge against the Union (the Union says Plaintiff filed only against the Hotel).  Mot. Dismiss at 16.  Given the unanswered questions regarding the right-to-sue-letter evidence of exhaustion, the Court declines to resolve this argument.  Instead, as the Court will explain, the Court holds that Plaintiff fails to state an ADEA claim for an independent reason: he fails to plausibly allege that the Union engaged in any age-based discrimination.

### 2.  Failure to Allege Age Discrimination

The Union argues that "Plaintiff's ADEA claim fails to plausibly allege that the Union discriminated against him on the basis of age."  Mot. Dismiss at 17 (cleaned up).  Specifically, the Union says that "Plaintiff's ADEA claim is subject to dismissal . . . [because] he has not

plausibly alleged that the Union (as opposed to the Hotel) discriminated against him on the basis of age." Mot. Dismiss at 10.  The Court agrees.

Violation of 29 U.S.C. §§ 623(c)(1) or 623(c)(3) occurs when a defendant causes, or attempts to cause, discrimination based on age.  Whether the Hotel engaged in age-discriminatory conduct against Plaintiff is not at issue in this motion to dismiss because the Hotel is not a party to it.  *See supra* note 1.  The Court agrees with the Union that Plaintiff's Amended Complaint fails to "allege that any action, or lack thereof, *by the Union* occurred because of his age." Mot. Dismiss at 17 (emphasis added).  The only age-related allegations in Plaintiff's complaint concern two comments about his age that were both allegedly made by the Hotel's representatives and not the Union.  Mot. Dismiss at 17; Am. Compl. ¶¶ 13, 15, 51, 55.  The first comment was allegedly made by the General Manager of the Hotel, Jennifer Goodman, and the second was allegedly made by the Hotel's Human Resources Director, Tracy Mitchel.  Mot. Dismiss at 17; Am. Compl. ¶¶ 13, 15, 51, 55.  Plaintiff does not allege that the Union or any of the Union's employees made comments that discriminated against him on the basis of his age. Instead, Plaintiff's ADEA claim against the Union revolves around Plaintiff's speculation that the Hotel and the Union occasionally communicated, but these vague allegations do not plausibly allege that the Union intentionally discriminated or caused discrimination against Plaintiff based on his age.  Mot. Dismiss at 17–18; Am. Compl. ¶¶ 13, 15, 51, 55, 26, 28 n.3, 38 n.9.  Similarly, Plaintiff's assertion that the Hotel and the Union's actions should be attributed to one another for purposes of his ADEA claim because the Hotel and Union have "a very cozy and underhanded relationship" is vague, and not the kind of plausible allegation that states a claim for relief.  Am. Compl. ¶ 103.  The fact that some Hotel employees also held roles as union representatives does not lend plausibility to this allegation.  *See id.* ¶¶ 28 n.3, 51 (noting that a Hotel employee who

was also a "union shop steward" overheard and laughed at another Hotel employee's alleged age-related comment).

**B.  Count II: Violation of the Union's Duty of Fair Representation ("DFR")**

Setting aside the likelihood that some of Plaintiff's DFR claims are time barred,[5] the Court agrees with the Union that "all of Plaintiff's DFR claims (both timely and untimely) fail to state a claim as a matter of law."  Mot. Dismiss at 20.  Thus, Plaintiff's DFR claims are dismissed.[6]

"The DFR is an implied statutory obligation that requires labor organizations 'to serve the interests of all members without hostility or discrimination toward any [members], to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct.'"  Mot. Dismiss at 21 (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).  "The statutory duty of fair representation was developed [in the 1940s] in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act . . . ."  *Vaca*, 386 U.S. at 177.  A breach of this duty occurs when a "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad

---

[5] DFR claims are "subject to a six-month statute of limitations . . . ."  *Simmons v. Howard Univ.*, 157 F.3d 914, 916 (D.C. Cir. 1998); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983).  Plaintiff filed suit on April 19, 2021.  Mot. Dismiss at 20.  Therefore, the six-month statute of limitations bars any claims based on actions taken before October 19, 2020.  *Id.*  Plaintiff's DFR claims that relate to the Union's actions before LCA negotiations required by the September 30, 2020 arbitration award are barred by the six-month statute of limitations.  *Id.*

[6] Plaintiff asserts a hybrid claim under § 301 of the Labor Management Relations Act (as amended 29 U.S.C. § 185) and the duty of fair representation claim.  Am. Compl. ¶¶ 96–97.  A hybrid § 301 claim involves a union member who sues their employer for breach of a CBA, while also asserting that their union breached its duty of fair representation.  *See Int'l Ass'n of Machinists & Aerospace Workers v. Allied Prods. Corp.*, 786 F.2d 1561, 1563 (11th Cir. 1986).  Here, Plaintiff alleges that the Hotel breached its CBA with the Union, and that the Union breached its duty of fair representation to Plaintiff.  Am. Compl. ¶¶ 96–97.  The § 301 claim against the Hotel is not at issue in this opinion.

faith.  *Vaca*, 386 U.S. at 190.  The courts give significant deference to a union's conduct.  *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991).

Plaintiff argues "that the Union breached its duty of fair representation . . . to Plaintiff." Mot. Dismiss at 19; Am. Compl. ¶¶ 96–97.  Specifically, Plaintiff argues that the Union "breached its DFR by participating with the [H]otel on every breach of the CBA and by committing [f]raud through the arbitration process to obtain a favorable arbitration award and committing wire fraud to convince [P]laintiff to sign a hostile Last Chance Agreement that will be used to fire [P]laintiff again."  Am. Compl. ¶ 96.

Plaintiff fails to plausibly allege that the Union's actions were arbitrary.  In fact, "Plaintiff's Amended Complaint and its thirty-one exhibits . . . demonstrate that the Union went above and beyond its obligations in satisfying its duty of fair representation to Plaintiff."  Mot. Dismiss at 2.  Specifically, the Union negotiated with the Hotel over the LCA for several months, resulting in Beraki's reinstatement to a front-desk agent position he desired with full seniority and backpay.  Mot. Dismiss at 6–7; Am. Compl. ¶¶ 77–81.  Additionally, the Union also succeeded in negotiating favorable terms in the LCA that resulted in "the removal of a clause from the LCA that could have allowed the Hotel to terminate Plaintiff for lack of work." Mot. Dismiss at 7; Am. Compl. Ex. 27 at 169, ECF No. 11.

Even looking beyond these positive results, Plaintiff has failed to plausibly state any DFR claims against the Union in relation to its arbitration strategy.  For a DFR claim to succeed based on the Union's strategic decisions, Plaintiff must show "that the [U]nion acted with reckless disregard for the employee's rights . . . ."  *Bey v. Wash. Metro. Area Transit Auth.*, 341 F. Supp. 3d 1, 24 (D.D.C. 2018)).  Further, the law provides the Union with "room to make discretionary decisions and choices, even if those judgements are ultimately wrong."  *Carrington v. United*

*States*, 42 F. Supp. 3d 156, 162 (D.D.C. 2014) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45–46 (1998)).

Despite the Union's successes in representing Plaintiff at arbitration, Plaintiff raises various complaints about the Union's strategic choices throughout the arbitration.  Am. Compl. ¶¶ 32 n.6, 33, 59, 74, 74 n.12.  Specifically, Plaintiff argues that the Union failed to present as evidence at the arbitration a letter in which the Plaintiff alleged that the Hotel had violated the CBA and that the Union failed to contest certain allegations the Hotel made during the arbitration.  *Id.* ¶ 59.  Additionally, Plaintiff argues that the Union failed to call various witnesses to corroborate Plaintiff's allegation that the Hotel has a "salacious" culture and that the Hotel presented forged documents at the arbitration.  *Id.* ¶¶ 74, 74 n.12.  According to Plaintiff, the Union colluded with the Hotel to convince Plaintiff to sign a hostile LCA that would function as a means for the Hotel to fire Plaintiff.  *Id.* ¶ 96.

However, strategic decisions such as whether to call witnesses, submit evidence, and raise certain arguments are up to the Union's discretion.  *See Bey*, 341 F. Supp. 3d at 24–25 (holding that a union's decision not to submit evidence during an arbitration was at most a judgment error but not a DFR breach); *Carrington*, 42 F. Supp. 3d at 164–65 (holding that a union's decision not to investigate a removal grievance but instead to argue that timeliness had been waived was a reasonable strategy that did not breach the DFR); *Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*, 966 F. Supp. 4, 8 (D.D.C. 1997) (holding that a union's failure to present a witness was not a DFR breach).  None of the strategic decisions Plaintiff complains

about rise to the level of evidencing disregard for his rights. [7]  The Union did not show reckless

disregard, but rather appropriate discretion in its successful representation of Plaintiff.

      Additionally, the Union's actions were not discriminatory or made in bad faith.  Plaintiff

argues "that the Union breached its DFR by 'arranging the fake August 22, 2019, grievance

meeting' and by taking the Hotel's side in the grievance meeting.'"  Mot. Dismiss at 24; Am.

Compl. ¶ 38.  However, and as the Union correctly points out, "[t]he transcript of the August 22,

2019, grievance meeting . . . demonstrates the opposite."  Mot. Dismiss at 24; Am. Compl. Ex.

12 at 20–99, ECF No. 11.[8]  This transcript details the Union representative's more than

competent advocacy for Plaintiff's shift change and promotion grievances against the Hotel.

Mot. Dismiss at 24.  Further, when the Hotel ultimately terminated Plaintiff's employment, "the

Union promptly and successfully challenged that decision." *Id.* at 25.  The Union's actions did

not "seriously undermine[] the arbitral process [or] contribute[] to the allegedly erroneous

outcome of the contractual proceedings." *Gwin*, 966 F. Supp. at 7.

      Plaintiff also fails to state a DFR claim with regard to additional aspects of the LCA

negotiations.  Mot. Dismiss at 26.  Here, "Plaintiff complains that the LCA did not include a

'video clause' he requested that would have related to his ability to review footage from the

---

[7] Plaintiff also alleges that the Union failed to contest certain of the Hotel's allegations at arbitration in an effort to cover up a conspiracy between the Union and Hotel that was captured on an "[A]ugust 22, 2019 audio recording." Am. Compl. ¶ 74.  At first glance, this sounds like an allegation of bad faith.  But Plaintiff attached the transcript of the August 22, 2019 recording to  the Amended Complaint, and nothing in it suggests any conspiracy between the Union and the Hotel.  Am. Compl. Ex. 12 at 20–99, ECF No. 11.

[8] "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Here, the transcript is attached as an exhibit to the amended complaint.  Thus, the transcript is appropriately referenced by the Court to determine whether Plaintiff's amended complaint fails to state a claim for relief.

Hotel's surveillance cameras in the future."  Mot. Dismiss at 27; Am. Compl. ¶¶ 81–82.

However, since a union has significant "discretion to pursue only those grievances it fairly

considers to be meritorious[,]" a breach of the DFR does not exist merely because a union settles

without obtaining all of the relief sought.  *Lewis v. Greyhound Lines-East*, 555 F.2d 1053, 1055

(D.C. Cir. 1977).  For a breach of the DFR to exist in Plaintiff's case, he must plausibly allege

that the LCA terms negotiated between the Hotel and the Union were arbitrary or wholly

irrational, or that the Union's actions were discriminatory, or in bad faith.  *O'Neill*, 499 U.S. at

78; *Harris v. ATU Loc. 689*, 825 F. Supp. 2d 82, 87 (D.D.C. 2011).  Here, the Union successfully

represented Plaintiff's grievances by negotiating an LCA with the Hotel that resulted in

Plaintiff's reinstatement to his previous position with full back pay and seniority rights, an award

of a front desk agent position that Plaintiff desired, and even the removal of a clause from the

LCA that could have allowed the Hotel to terminate Plaintiff for lack of work.  Thus, Plaintiff's

DFR claims are dismissed.

### C.  Count III: Vacatur of the Arbitration Award under the Federal Arbitration Act ("FAA")

Plaintiff fails to state an FAA claim.  For the Court to vacate an award under the FAA,

the Union or the Hotel—and not Beraki—must file an application with the Court for being

adversely affected or aggrieved by the resulting award.  9 U.S.C. § 10.  The FAA has been

strictly construed by courts "to prohibit an employee who was not a party to the arbitration from

appealing the results of the arbitration between the employee's union and employer."  *Payne v.
Giant Food, Inc.*, 346 F. Supp. 2d 15, 22 (D.D.C. 2004) (quoting *Bacashihua v. U.S. Postal
Serv.*, 859 F.2d 402, 405 (6th Cir. 1988)).

Here, the Hotel and the Union were the only parties to the arbitration, and not Plaintiff. For an employee—like the Plaintiff here—to be considered a party to the arbitration, they must show "that the [U]nion breached its duty of fair representation." *Loc. 300, NPMHU v. NPMHU*, 764 F. Supp. 199, 205–07 (D.D.C. 1991) (citation omitted).  As established in the foregoing section of this opinion, Plaintiff fails to state a claim that the Union breached its DFR.  Thus, Plaintiff's FAA claim is dismissed for lack of standing.

### D.  Count IV: Violation of 29 U.S.C. § 411(a)(5)

Plaintiff's 29 U.S.C. § 411(a)(5) claim is dismissed for failure to state a claim.  As the Union correctly states, Plaintiff fails to plead "any facts plausibly alleging a violation of this section of the LMRDA, which provides that, '[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof'" unless the member has been given certain procedural safeguards against disciplinary action by a union.  Mot. Dismiss at 8 n.7 (quoting 29 U.S.C. § 411(a)(5)).

Here, "[i]n an introductory paragraph to his Amended Complaint, Plaintiff . . . asserts that he brings an action pursuant to the [LMRDA] . . . but he does not refer to this cause of action again."  Mot. Dismiss at 8 n.7; Am. Compl. ¶ 1.  Nor, in any event, does the Amended Complaint assert that the Union disciplined Plaintiff in any way.  Because Plaintiff so briefly gestures at a claim under 29 U.S.C. § 411(a)(5), without elaboration, this claim is dismissed.

### E.  The Court Does Not Address Any Title VII Claim

In his Amended Complaint, Plaintiff writes "that he will seek to amend" in order to bring a Title VII claim once he receives a right-to-sue letter from the EEOC.  Am. Compl. ¶ 101. Thus, even though Plaintiff  labels this Title VII discussion his "Fo[u]rth Cause of Action," *id.* at

34, there is no Title VII claim currently before the Court.  The Court therefore does not address the merits of any such claim.

## V.  CONCLUSION

For the foregoing reasons, the Union's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 12) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  04/05/2022                                          RUDOLPH CONTRERAS
                                                             United States District Judge